```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
                                  :
THE ELECTRICAL WELFARE TRUST
FUND                              :

     v.                           :  Civil Action No. DKC 16-2186

                                  :
UNITED STATES OF AMERICA, et al.
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion to dismiss filed by Defendants Thomas E. Price,[1] in his capacity as Secretary of the United States Department of Health and Human Services (the "Secretary"), the United States Department of Health and Human Services, and the United States of America (collectively, the "United States" or the "Government"). (ECF No. 18). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

---

[1] Pursuant to Fed.R.Civ.P. 25(d), Thomas E. Price, the Secretary of the United States Department of Health and Human Services and the successor of Sylvia Burwell, the original named Defendant, has been substituted automatically as Defendant.

I.  **Background**[2]

Plaintiff Electrical Welfare Trust Fund, Inc. ("Plaintiff") is a self-funded, self-administered group health plan. Under the Patient Protection and Affordable Care Act of 2010 ("ACA"), all individuals must maintain "minimum essential" health insurance coverage, 26 U.S.C. § 5000A, and health insurance providers cannot discriminate against individuals with pre-existing medical conditions by denying them coverage, 42 U.S.C. § 300gg-3. As a result of these policy changes, Congress anticipated that the enrollment of a disproportionate number of previously uninsured, high-risk individuals into the health insurance market could cause premiums to rise for all insured individuals. To stabilize premiums during the first three years, the ACA established the Transitional Reinsurance Program ("TRP"). *See* 42 U.S.C. § 18061(c)(1). The TRP mandates that all "health insurance issuers, and third party administrators on behalf of group health plans, . . . make payments to an applicable reinsurance entity for any plan beginning in the 3-year period beginning January 1, 2014." *Id.* § 18061(b)(1)(A). The "reinsurance entities" then reallocate the money collected to health insurance issuers that incur higher costs by covering high-risk individuals. *Id.* § 18061(b)(1)(B).

---

[2] Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff.

2

Under the TRP provisions, the Secretary is tasked with "issu[ing] regulations setting standards for meeting the requirements . . . with respect to . . . the establishment of the reinsurance and risk adjustment programs." 42 U.S.C. § 18041(a)(1)(C). Specifically, the Secretary has the authority to determine the methodology for setting the amounts each health insurance issuer must contribute to the reinsurance entities under the reinsurance mandate. *Id.* § 18061(b)(3)(A). Pursuant to this authority, the Secretary issued a regulation defining a "contributing entity" with respect to group health plans as: "a self-insured group health plan . . . whether or not it uses a third party administrator" for the 2014 benefit year; and "a self-insured group health plan . . . that uses a third party administrator" for the 2015 and 2016 benefit years. 45 C.F.R. § 153.20(2). Therefore, self-insured, self-administered group health plans were subject to the reinsurance mandate and had to contribute to the TRP for 2014, but not for 2015 and 2016. *Id*. In rulemaking comments, the Secretary explained this change in status for such plans by noting that the statute could "reasonably be interpreted in more than one way with respect to the applicability of [the reinsurance mandate] to self-insured, self-administered plans." Patient Protection and Affordable Care Act; HHS Notice of Benefit and Payment Parameters for 2015, 79 Fed. Reg. 13,773 (Mar. 11, 2014). The Secretary stated that

the "better reading" was to exclude such entities from the reinsurance mandate, but that the government would include these entities for the 2014 year "in order to avoid disruption to contributing entities." *Id.*

Plaintiff is a self-funded, self-administered group health plan that was subject to, and paid, the reinsurance mandate for the 2014 benefit year. (ECF No. 1 ¶ 20). On June 17, 2016, Plaintiff filed this tax refund suit on behalf of itself and the putative class of similarly situated self-funded, self-administered health plans. (ECF No. 1). Plaintiff asserts that the Secretary's interpretation of the statute impermissibly included such plans among those required to pay reinsurance contributions for the benefit year 2014. It contends that the ACA is unambiguous with respect to which entities are required to abide by the reinsurance mandate and maintains that self-funded, self-administered group health plans are not among them. The Government moved to dismiss the case for lack of subject matter jurisdiction on November 28. (ECF No. 18). Plaintiff responded in opposition (ECF No. 19), and the Government replied (ECF No. 24).

## II. Standard of Review

The Government moves to dismiss for lack of subject matter jurisdiction because sovereign immunity bars Plaintiff's claims. (ECF No. 18). Generally, "questions of subject matter

jurisdiction must be decided first, because they concern the court's very power to hear the case." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999).  The party bringing suit in federal court bears the burden of proving that subject matter jurisdiction properly exists.  *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a Fed.R.Civ.P. 12(b)(1) motion, the court may consider evidence outside the pleadings to help determine whether it has jurisdiction over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  A court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

**III. Analysis**

    **A.   Waiver of Sovereign Immunity Under 28 U.S.C. § 1346(a)(1)**

The doctrine of sovereign immunity precludes suit against the United States, "'save as it consents to be sued.'"  *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  Congress has consented to tax refund suits under 28 U.S.C. § 1346(a)(1) (the "Tax Refund Statute"), which grants federal district courts jurisdiction over "civil action[s] against the United States for

5

the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." Plaintiff asserts that the reinsurance mandate constitutes an "internal-revenue tax" that was "erroneously or illegally assessed or collected" from it in 2014. (ECF No. 19, at 17). Alternatively, Plaintiff maintains that its reinsurance contributions meet the standard in the "any sum" provision of the Tax Refund Statute. (*Id.* at 29). The Government argues that reinsurance contributions do not qualify under either provision of the Tax Refund Statute.

### 1. Internal-Revenue Tax

Plaintiff contends that the reinsurance mandate is a tax. It argues that the applicable test in the United States Court of Appeals for the Fourth Circuit comes from *In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir. 1996). In *Leckie*, the court adopted a four-part test to decide whether a government imposed exaction was a tax for purposes of the Anti-Injunction Act, 26 U.S.C. § 7421(a). To protect the government's ability to collect taxes without judicial delay and interference, the Anti-Injunction Act bars all claims brought "for the purpose of restraining the assessment or collection of any tax," and instead requires taxpayers to raise such objections in tax refund suits after the taxes have been paid. *Leckie*, 99 F.3d at

6

584. The court in *Leckie* determined whether the exaction in question was a tax "by asking whether [the exaction] had each of four features: '(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property; (b) Imposed by or under authority of the legislature; (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; (d) Under the police or taxing power of the state.'" *Id.* at 583 (quoting *United States v. City of Huntington, W. Va.*, 999 F.2d 71, 73 nn.4-5 (4th Cir. 1993)).

In *Pittston Co. v. United States*, 199 F.3d 694, 702 (4th Cir. 1999), the Fourth Circuit held that the same test applied to determining whether an exaction fell under the Tax Refund Statute. Noting that "the very purpose of the [Anti-Injunction Act] is 'to allow the Federal Government to assess and collect allegedly due taxes . . . and to compel taxpayers to raise their objections to collected taxes in suits for refunds,'" the court held that "a decision that a premium is a tax for the purposes of the Anti-Injunction [Act] necessarily is a decision that an objection to that assessment must be litigated in a tax refund action" under the Tax Refund Statute. *Id.* (quoting *Leckie*, 99 F.3d at 584).

Applying the test from *Leckie*, Plaintiff contends that its reinsurance contributions are a tax because they are "(a) an involuntary pecuniary burden, laid upon Plaintiff and Class

7

members; (b) imposed by Congress; (c) for public purposes, including . . . defraying health insurance coverage expenses; (d) under the taxing power of Government." (ECF No. 19, at 21). Plaintiff also argues generally that United States Supreme Court precedent makes clear that "congressional labels have little bearing on whether an exaction qualifies as a 'tax' for statutory purposes." (ECF No. 19, at 21). Instead, it posits, the "essential character" of an exaction governs whether it qualifies as a tax. (*Id.* at 22).[3]

The Government argues that *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) ("*NFIB*"), limits the applicability of the *Leckie* test here. (ECF No. 24, at 14-15). In *NFIB*, the Supreme Court considered, *inter alia*, whether the individual insurance mandate in the ACA, which was

---

[3] Plaintiff also argues for the application of the approach used by the district court in *Ohio v. United States*, 154 F.Supp.3d 621, 629 (S.D.Ohio 2016), *aff'd*, 849 F.3d 313 (6th Cir. 2017). Although the *Ohio* court addressed a similar jurisdictional challenge to the TRP, the trial court applied the "broader view" of the term "internal-revenue tax" adopted by the United States Court of Appeals for the Sixth Circuit originally in *Horizon Coal Corp. v. United States*, 43 F.3d 234 (6th Cir. 1994). *Ohio v. United States*, 154 F.Supp.3d at 629. Both *Leckie* and *Pittston* were decided by the Fourth Circuit after *Horizon Coal* without adopting its analysis, and there is no indication that any court in the Fourth Circuit has ever applied that Sixth Circuit standard. More importantly, as discussed in detail below, the Government here argues that both the Sixth and Fourth Circuits' approaches must be viewed in light of the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), an argument neither made to nor considered by the court in *Ohio*.

8

labeled a "penalty" instead of a "tax," qualified as a tax under the Anti-Injunction Act. The Court emphasized that, as "creatures of Congress's own creation," Congress is generally free to choose how statutes relate to each other. *Id.* at 544. According to the Court, Congress's decision not to label certain exactions as taxes, especially in light of labelling several other exactions as taxes elsewhere in the ACA, was an expression of its intent as to how the individual mandate should relate to other statutory provisions applicable to taxes, such as the Anti-Injunction Act. *Id.* The Court thus rejected an approach that considered whether the individual mandate "function[ed] like a tax," and held that Congress's label as a "penalty" meant that the Anti-Injunction Act did not apply. *Id.* at 544-546.

Plaintiff counters that the decision in *NFIB* as to the applicability of the Anti-Injunction Act is not determinative. (ECF No. 19, at 28). Plaintiff appears to be arguing that, although "a decision that a premium is a tax for the purposes of the Anti-Injunction [Act] necessarily is a decision that an objection to that assessment must be litigated in a tax refund action" under the Tax Refund Statute, *Pittston Co.*, 199 F.3d at 702, a decision that a premium is *not* a tax for the purposes of the Anti-Injunction Act does not necessarily mean that the exaction does not qualify as a tax under the Tax Refund Statute (ECF No. 19, at 28). Plaintiff emphasizes that the Anti-

Injunction Act addresses the timing of the filing of a claim, whereas the Tax Refund Statute addresses whether and where a claim can be brought at all. (*Id.*).

Plaintiff's arguments ignore the reasoning in the Supreme Court's opinion in *NFIB*.[4] The Court made clear that, when Congress passed the ACA, it chose to label some exactions taxes but to use a variety of other labels for other exactions. The Court held that Congress chose these words with purpose, and that one of the purposes of choosing not to use the label "tax" in the ACA was to avoid the statutory repercussions of that label. That analysis applies regardless of whether the Anti-Injunction Act or the Tax Refund Statute is involved. The court's holding that "[h]ow [two statutes] relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text," *NFIB*, 567 U.S. at 544, applies to both the Anti-Injunction Act and the Tax Refund Statute.

---

[4] In some cases, Plaintiff also ignores the direct effect of *NFIB*. For example, it points out that the Government's current position is in conflict with its position at the district court level in *NFIB*, where it asserted that individual mandate plaintiffs could challenge the law in tax refund proceedings after making their payments. (ECF No. 19, at 28 (citing Memorandum in Support of Defendants' Motion to Dismiss at 34, *Florida* ex rel. *McCollum v. U.S. Dep't of Health & Human Servs.*, No. 10-cv-00091, 2010 WL 2000518 (N.D.Fla. Apr. 8, 2010)). It does not bear on this case, however, that the Government originally argued that the individual mandate penalties could be blocked under the Anti-Injunction Act and raised subsequently under the Tax Refund Statute. The Supreme Court rejected that argument, and the Government is correct to change its position accordingly.

10

The Government's *NFIB* argument is bolstered by two Fourth Circuit decisions as to insurance mandates from the ACA. In *Liberty University, Inc. v. Geithner*, 671 F.3d 391, 404-06 (4th Cir. 2011) ("*Liberty I*"), *vacated*, 133 S.Ct. 679 (2012), the Fourth Circuit had found that the ACA's individual insurance mandate and employer insurance mandate were taxes, even though they were primarily labelled a "penalty" and an "assessable payment," respectively. The court held that the Anti-Injunction Act thus stripped the court of jurisdiction to hear the case. The court emphasized that the Supreme Court had "specifically found an exaction's label immaterial to the applicability of the [Anti-Injunction Act]," *id.* at 404 (citing *Lipke v. Lederer*, 259 U.S. 557 (1922)), and cited a string of cases in which the Court had "repeatedly instructed that congressional labels have little bearing on whether an exaction qualifies as a 'tax' for statutory purposes," *id.* at 404. The Supreme Court vacated the judgment in light of its decision in *NFIB* that the individual mandate was not a tax for Anti-Injunction Act purposes. 133 S.Ct. 679 (2012). On remand, the Fourth Circuit reviewed whether the employer mandate was a tax in light of *NFIB* and found that the "Supreme Court made clear [in *NFIB*] that the AIA does not apply to every exaction that functions as a tax." *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 87 (4th Cir. 2013) ("*Liberty II*"). It noted that "the Court in *NFIB* found it most

11

significant that Congress chose to describe the [exaction] as a 'penalty' rather than a 'tax.'" *Id.* at 87-88 (citing *NFIB*, 567 U.S. at 543). Focusing on Congress's labels, the court determined that the employer mandate was not a tax. *Id.* at 89.

Curiously, Plaintiff's opposition, without citing to the vacated *Liberty I* opinion, incorporates its language and citations nearly word for word to support its argument that the "essential character" of the exaction overrides congressional labels. (*Compare* ECF No. 19, at 21-22, *with Liberty I*, 671 F.3d at 404). That analysis is no longer applicable after *NFIB* and *Liberty II*.

Here, Congress labelled the reinsurance mandate a "payment" and a "contribution." *See* 42 U.S.C. §§ 10861(b). In addition to these labels, Congress required that these reinsurance contributions be paid to third-party reinsurance entities as opposed to the IRS, placed oversight of the TRP with the Secretary of Health and Human Services as opposed to the IRS or the Secretary of Treasury, and codified these provisions in Title 42 of the U.S. Code as opposed to the Internal Revenue Code.[5] Accordingly, the conclusion is inescapable that Congress

---

[5] Given these other factors, it is questionable whether Plaintiff's arguments would have sufficed under the *Liberty I* standard, which concluded only that "the term 'tax' in the [Anti-Injunction Act] reaches any exaction imposed by the [Internal Revenue] Code and assessed by the tax collector

did not intend for the reinsurance mandate to be considered an internal revenue tax.  Jurisdiction over Plaintiff's claims cannot be premised on the "internal revenue tax" provision of the Tax Refund Statute.

### 2. "Any Sum"

Plaintiff next argues that, even if the reinsurance mandate is not a tax, it qualifies under the Tax Refund Statute's "any sum" provision.  (ECF No. 19, at 29-30).  As noted above, the Tax Refund Statute also applies to "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."   28 U.S.C. § 1346(a)(1).   Plaintiff points to *Flora v. United States*, 362 U.S. 145, 149 (1960) ("*Flora II*"), in which the Court held that the "tax," "penalty," and "any sum" provisions should be read disjunctively, such that "'any sum,' instead of being related to 'any internal-revenue tax' and 'any penalty,' may refer to amounts which are neither taxes nor penalties."  Plaintiff contends that "Congress included the 'any sum' language to ensure a broad interpretation of the statute."  (ECF No. 19, at 30).[6]  The Tax Refund Statute, however, refers to "any sum . . . collected *under the internal-*

---

pursuant to his general revenue authority." *Liberty I*, 671 F.3d at 406.

[6] Plaintiff's opposition appears to quote *Flora II* for its language as to Congress's intent to ensure a "broad interpretation" of the "any sum" provision, but no such language can be found in the opinion.

13

*revenue laws*," 28 U.S.C. § 1346(a)(1) (emphasis added), and the Supreme Court's decision in *Flora II* held only that the "any sum" provision reached sums related to taxes, such as partial payments of income taxes and interest on tax payments. *See Flora II*, 362 U.S. at 149-150.  Plaintiff cites just one other case applying the "any sum" provision, which similarly related to interest on income taxes levied under the Internal Revenue Code and collected by the IRS.  *See E.W. Scripps Co. v. United States*, 420 F.3d 589, 590-91, 596-97 (6th Cir. 2005).  A review of the limited number of cases applying the "any sum" provision shows that the language has only been used to reach payments that could be described as "incidental to the recovery of an internal revenue tax," IRS, Tech. Advice Memorandum 200446021 (2004), 2004 WL 2567715 (analyzing the legislative history of the "any sum" provision from *Flora II* and other cases), *revoked*, IRS, Tech. Advice Memorandum 200750018 (2007), 2007 WL 4358501. *See United States v. Williams*, 514 U.S. 527, 532 (1995) (applying "any sum" provision to a payment made to the IRS to remove a tax lien on a house for tax deficiencies accrued by plaintiff's ex-husband); *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1410 (9th Cir. 1998) (applying "any sum" language in 26 U.S.C. § 7422 to overpayments of excise taxes collected by an airline and paid to the IRS);[7] *Strategic Hous. Fin. Corp. v.*

---

[7] The Supreme Court has held that the mirror language in the

*United States*, 608 F.3d 1317, 1326-27 (Fed.Cl. 2010) (applying "any sum" provision in § 7422 to arbitrage rebates under the Internal Revenue Code); *J.O. Johnson, Inc. v. United States*, 476 F.2d 1337, 1341 (Cl.Ct. 1973) (determining that the "any sum" provision in § 7422 included the assessment for accumulated earnings tax); *see also Reilly v. United States*, No. IP-87-629-C, 1987 WL 49366, at *3 (S.D.Ind Dec. 30, 1987) (explaining that the analysis in *Flora II* "does not give rise to . . . an expansive interpretation" of the "any sum" provision). Because exactions under the reinsurance mandate are not related to an internal revenue tax, the "any sum" provision is also inapplicable. Therefore, there is no subject matter jurisdiction over Plaintiff's claims under the Tax Refund Statute's waiver of sovereign immunity.

### B. Waiver of Sovereign Immunity Under the Administrative Procedure Act

In the alternative, Plaintiff asserts that jurisdiction exists under the waiver of sovereign immunity in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. (ECF No. 19, at 36). The APA provides that "[a] person suffering legal

---

Tax Refund Statute and § 7422 are meant to be coextensive. *Flora v. United States*, 357 U.S. 63, 65 (1958) ("*Flora I*"); *see also United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) (noting that the requirements of § 7742 must be met before a plaintiff can bring an action under the Tax Refund Statute). *But see Horizon Coal*, 43 F.3d at 240 (applying different definitions of an "internal revenue tax" for purposes of the Tax Refund Statute and § 7422).

15

wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This waiver of sovereign immunity is limited, however, to actions "seek[ing] relief other than money damages." *Id*. The Government argues that the APA's waiver of sovereign immunity does not apply because Plaintiff seeks money damages here. (ECF No. 18-1, at 20).

Plaintiff does not dispute that the damages it seeks are money damages as defined in the APA. Instead, Plaintiff argues that its claim for declaratory relief from the reinsurance payments on behalf of those class members who have yet to make the payments satisfies the APA requirement. (ECF No. 19, at 36). Even if Plaintiff could show that such a claim for declaratory relief met the APA standard, this case must be dismissed because Plaintiff itself could not bring such a claim. Plaintiff has submitted its reinsurance payments and now seeks damages for the fees it has already paid. It is well established that courts "analyze standing based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (citing *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011)). It is insufficient to allege merely "that injury has been suffered by other, unidentified members of the class to which they belong and which

they purport to represent." *Doe v. Obama*, 631 F.3d at 160 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). Accordingly, Plaintiff has not alleged a claim over which subject matter jurisdiction would exist under the APA's waiver of sovereign immunity.

Plaintiff cannot show that any waiver of sovereign immunity applies to its claims. Therefore, the court has no jurisdiction, and the Government's motion to dismiss will be granted.[8]

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by the Government will be granted. A separate order will follow.

                                             /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge

---

[8] As noted by the Government, jurisdiction over Plaintiff's claims may lie in the United States Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491, which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

*See also*, *Batsche v. Burwell*, 210 F.Supp.3d 1130, 1136 (D.Minn. 2016). The parties have not sought a transfer to that court, *see* 28 U.S.C. § 1631, and the court declines to consider that alternative *sua sponte*.

17